UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
CHRISTOPHER TORRES,

      Plaintiff,      CLASS ACTION
                 COMPLAINT
 - against -

JETBLUE AIRWAYS CORPORATION,

      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

  Plaintiff Christopher Torres ("Torres" or "Plaintiff") by his attorneys, Vladeck, Raskin & Clark, P.C., complains of defendant JetBlue Airways Corp. ("JetBlue" or "Defendant" or the "Company") as follows:

## NATURE OF CLAIMS

  1. As set forth below, this class action seeks to remedy JetBlue's systematic discriminatory policy of refusing to consider reasonable accommodations for disabled employees ("Class Members") for anything it dubs an essential work function.

  2. This illegal policy deprives Class Members of the opportunity to do work they are capable of, in violation of disability rights laws.

  3. JetBlue stated this discriminatory policy in writing to Torres, after he simply asked to continue a job he had been doing successfully for a year.

  4. Torres had planned to earn career advancement at the Company in customer service, a field he had studied for, through his hard work. JetBlue fired him instead – simply because he was disabled.

  5. JetBlue stated that it would not consider the request for a minimal accommodation, merely because it related to what JetBlue dubbed an essential job function. In

#41354

other words, JetBlue considers providing any accommodation at all for what it deems an essential job function to be "remov[ing]" the job function.

6. This policy is unlawful and discriminatory. Disability rights laws were passed so that people with disabilities can work. For example, Congress in the Americans with Disabilities Act (ADA) found that the "continuing existence of unfair and unnecessary discrimination and prejudice" – like JetBlue's here – "denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C.A. § 12101.

7. Thus, the ADA includes in its definition of "qualified individual" anyone who, "<u>with or without reasonable accommodation</u>, can perform the essential functions of the employment position." 42 U.S.C.A. § 12111(8).

8. Torres, who has his arm amputated below the elbow, had been working for JetBlue for a year without problems.

9. Torres just needed help with the occasional, 5-minute task of independently opening and closing the aircraft door during certain shifts. He had no problem arranging this help informally with his co-workers or supervisors.

10. When, however, he was made to request the accommodation formally through JetBlue's central office, JetBlue refused to consider it.

11. JetBlue's central ADA office first dubbed this brief, occasional task (found nowhere in the job description) to be an essential job function. It then claimed that any accommodation at all would "remove" an essential job function.

12. In a filing to the Equal Employment Opportunity Commission, its lawyer confirmed JetBlue's illegal policy — any employee who cannot perform "essential functions" of the job is "not entitled to an accommodation."[1]

13. Plaintiff brings this action, on behalf of himself and on behalf of JetBlue's other disabled employees in New York, to remedy JetBlue's discriminatory treatment. Specifically, Plaintiff brings this action to remedy violations of the ADA, 42 U.S.C. §§ 1201 et seq.; the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the "NYSHRL"); and the Administrative Code of the City of New York § 8-101 et seq. (the "NYCHRL").

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the ADA claim under 28 U.S.C. § 1331.

15. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the NYSHRL and NYCHRL claims because these claims closely relate to the above federal claims, having arisen from a common nucleus of operative facts such that all claims form part of the same case or controversy.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because defendants regularly do business in Queens, New York and the acts of discrimination occurred within the Eastern District of New York.

17. Pursuant to Section 8-502(c) of the NYCHRL, plaintiff will cause to be served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

---

[1] JetBlue Position Statement, May 1, 2024, from R. Berti, Ackerman LLP, to D. Bastidas, EEOC Enforcement Supervisor, Jan. 5, 2024.

3

18. Plaintiff filed a charge of retaliation with the United States Equal Employment Opportunity Commission (the "EEOC") against Defendant on or about October 26, 2023. On January 7, 2025, the EEOC issued a notice of right to sue.

## PARTIES

19. Torres is a 31-year-old man residing in the Bronx.

20. JetBlue is a major airline in the United States. It operates both domestically and internationally.

21. JetBlue has more than 8,000 employees in New York, including at LaGuardia and John F. Kennedy airports.

22. JetBlue is headquartered in Long Island City, Queens, New York.

## FACTUAL ALLEGATIONS

### Plaintiff Christopher Torres

23. Torres is a graduate of CUNY Lehman College, holding a bachelor's degree in business administration, with a concentration in human resources and marketing.

24. His left arm was amputated below the elbow in 1998. He is substantially impaired in the major life activities including performing manual tasks.

25. After graduating in 2017, Torres worked part-time jobs as a sales associate for various companies. He became a part-time guest experience representative at Madison Square Garden ("MSG"), which continued during his part-time employment at JetBlue.

26. In 2022, Torres applied and was accepted to work at JetBlue. He hoped to work his way up the ranks in JetBlue to pursue a full-time job in his field.

27. He began with a two-week training at JetBlue University in Orlando, Florida.

4

28. Torres took, and passed, three examinations testing his skills to secure employment at JetBlue.

29. While in the training program, Torres disclosed his disability to JetBlue, and asked whether there would be any physical component to their tests.

30. JetBlue instructors assured him that all he needed to demonstrate to secure a position in airport operations was his computer proficiency.

31. Torres then started working for JetBlue at LaGuardia airport in April 2022. He worked in airport operations, performing all of his work satisfactorily and having no problems, for over a year.

32. When he started, Torres was trained to work in three areas: (1) at the front counter (checking passengers in); (2) gates, working the jetbridge; or (3) in the baggage office.

33. JetBlue used a "bid" system for these assignments. Every three months, employees bid for assignments. There were more than 60 "bidlines." Assignments were by seniority. During his first year, assignments in four areas were open to Torres at his seniority level. He received assignments in:

    a. AO counter;

    b. AO gates;

    c. AO baggage office; and

    d. AO relief (can be assigned anywhere needed).

34. In all of these assignments, the only part of the job he could not do was opening and closing the aircraft door without help when he was assigned to gates.

35. He could operate the jet bridge, and never had difficulties with baggage.

36. On the few occasions when Torres was assigned to gates, there were other people working on the team; the team would divide the work so that a co-worker or supervisor was responsible for the aircraft door, and Torres would do other work, like scanning tickets.

37. This accommodation only required a co-worker's assistance for less than five minutes and caused no disruption to JetBlue's operations as Torres would take over that co-worker's duties for the time being.

38. No one he worked with expressed concerns about this accommodation at any time.

39. In or around March 2023, Torres was working a night shift and was scheduled to do the jet bridge and open the aircraft door.

40. Torres told his supervisor, Ziv Moran, that he needed help with the aircraft door.

41. Moran said "no problem" and assigned someone else to do it.

42. Moran told Torres to email the managers to let them know his situation about working gates.

43. Torres did so. Stephanie Dumormay, another manger, responded. She said, "Thank you for bringing this to our attention," and asked him to contact the ADA team to request the accommodation formally.

44. In June 2023, Torres made the request and (although his disability was obvious) followed JetBlue's burdensome request to submit medical documentation.

45. JetBlue denied the request on August 22, 2023.

46. JetBlue stated that "operating the Jet bridge and aircraft doors is an essential function of the role."

47. In fact, there is nothing in JetBlue's airport operations job description about aircraft doors. The job description includes operating the jet bridge, which Torres could do.

48. JetBlue proceeded to claim that, by requesting any accommodation, Torres was asking them to "remove" an essential job function.[2]

49. Torres explained that he was not asking to remove a job function, he was asking for a reasonable accommodation for it.

50. He noted that, by the time of this discussion, he had been working for well over a year without difficulty, just asking a buddy to assist him with the aircraft door when that task came up.

51. JetBlue immediately repeated its refusal, claiming they could not guarantee a buddy to help Torres operate the aircraft door.

52. Torres suggested an alternative: Under JetBlue's bid system, working gates was not the only option. Working within his seniority, Torres had always had other options.

53. Torres proposed that he could simply not choose gates as an assignment in the future.

54. JetBlue also refused this alternative accommodation. They claimed that even in a different rotation he could be called on to work gates "due to operational needs." He has never seen that happen.

55. On information and belief, JetBlue's central ADA office did not speak with Torres's supervisors or do any individual evaluation at all to determine the burden, if any, of the proposed accommodations.

---

[2] Email dated August 28, 2023 from Jet Blue ADA Compliance Team to C. Torres.

56. Instead of engaging in an interactive process or cooperative dialogue over these – or any other – alternatives, JetBlue effectively fired Torres.

57. JetBlue initially placed Torres on six months of unpaid "leave" through February 29, 2024, after which they said he would be fired.

58. Torres has apparently been retained on unpaid leave. He has not been paid since 2023, but continues to receive certain JetBlue benefits and communications.

59. JetBlue said that Torres could look for another position within the company, and he has been doing that, but the positions that he has seen either require expertise he does not have, or are listed as requiring lifting, so he would need the reasonable accommodations that JetBlue refuses to consider.

60. Torres's attorney sent two letters to JetBlue asking to discuss his reasonable accommodation claim. JetBlue did not respond.

61. Torres, through counsel, then filed an EEOC complaint. As noted above, JetBlue confirmed to the EEOC its refusal to <u>consider</u> any accommodation, for Torres or anyone else it thinks is "unable to perform" any "essential functions" of the job.

62. As a result of the discrimination and retaliation by JetBlue, Torres has suffered emotional distress, embarrassment, reputational harm, and career harm, which is ongoing.

63. Torres still wants to return to his job at JetBlue with reasonable accommodations.

## Class Action Allegations

64. Pursuant to Fed. R. Civ. P. 23(b)(2), named plaintiff Torres brings this action for injunctive and declaratory relief on his own behalf, and on behalf of all persons similarly situated.

65. The class that Plaintiff seeks to represent is composed of all qualified JetBlue employees in New York with disabilities that require reasonable accommodations, who have been or reasonably fear they will be subject to JetBlue's discriminatory policy of not evaluating reasonable accommodations for anything deemed an essential job function ("Class Members").

66. The class claims asserted herein are solely for injunctive and declaratory relief for Class Members; damage claims are not included in the class allegations.

67. Class Members are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court. According to the Centers for Disease Control, over 1 in 4 New York State residents have a disability.[3] JetBlue employs nearly 8,800 people in New York State as of October 2024.[4] Thus, at least hundreds of disabled employees are subject to the illegal policy.

68. The JetBlue "ADA Compliance Team," which confirmed the illegal policy in emails to Torres, is a centralized office in JetBlue's headquarters in Long Island City. It appears that this same central office makes accommodation decisions for JetBlue's 8,800 New York employees.

69. There is a well-defined community of interest in the questions of law and fact involved affecting the persons to be represented in that they are all being subject to

---

[3] Centers for Disease Control and Prevention, Disability & Health U.S. State Profile Data for New York (Adults 18+ years of age), https://dhds.cdc.gov/SP?LocationId=36&CategoryId=DISEST&ShowFootnotes=true&showMode=&IndicatorIds=STATTYPE,AGEIND,SEXIND,RACEIND,VETIND&pnl0=Chart,false,YR7,CAT1,BO1,,,,AGEADJPREV&pnl1=Chart,false,YR7,DISSTAT,,,,,PREV&pnl2=Chart,false,YR7,DISSTAT,,,,,AGEADJPREV&pnl3=Chart,false,YR7,DISSTAT,,,,,AGEADJPREV&pnl4=Chart,false,YR7,DISSTAT,,,,,AGEADJPREV&t=1735843877226 (last visited January 2, 2025).

[4] JetBlue, Go Long (Island): JetBlue Flights from Islip Take Off Today, https://ir.jetblue.com/news/news-details/2024/Go-Long-Island-JetBlue-Flights-from-Islip-Take-Off-Today/default.aspx#:~:text=Currently%2C%20JetBlue%20employs%20nearly%208%2C800,center%20in%20Long%20Island%20City (Oct. 24, 2024).

discrimination by JetBlue's refusal to evaluate reasonable accommodations for what they deem essential job functions.

70. JetBlue acted or refused to act on grounds that apply generally to the class, including by maintaining a policy of refusal to consider reasonable accommodations for what they deem to be essential job functions, which also constitutes a systematic failure to engage in the required cooperative dialogue. As such, there are questions of law and fact common to the class and a single injunction would provide relief to each Class Member.

71. Plaintiff is an adequate class representative because he is directly impacted by JetBlue's consistent failures to consider reasonable accommodations for anything deemed to be an essential job function for disabled employees. He wants to return to JetBlue's active roster from his unpaid leave, and cannot do so until JetBlue considers his reasonable accommodation request as required by law. Plaintiff's interests are not antagonistic to, or in conflict with, the interests of the class as a whole.

72. The attorneys representing the class are highly trained, duly qualified, and experienced in representing plaintiffs in civil rights class actions.

73. Plaintiff's claims are typical of the claims of the class as a whole because Torres is similarly affected by the violations described herein.

FIRST CAUSE OF ACTION
Violation of Title I of the Americans with Disabilities Act
(42 U.S.C. § 12111 <u>et seq.</u>)

74. Plaintiff and the class repeat and reallege all above paragraphs as if fully set forth herein.

75. By the acts and practices described above, defendant has discriminated against plaintiff and Class Members by refusing to provide reasonable accommodations to disabled employees.

76. Defendant is liable under the ADA as plaintiff's and Class Members' employer because they have fifteen or more employees.

77. Defendant has acted with malice and/or reckless indifference to plaintiff's and the Class Members' statutorily protected rights.

78. As a result of defendant's discriminatory acts, plaintiff and the class have suffered, are suffering, and will continue to suffer irreparable injury unless and until this Court grants relief.

79. As a result of defendant's discriminatory acts, plaintiff Torres has suffered, is suffering, and will continue to suffer monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

SECOND CAUSE OF ACTION
Violation of the New York State Human Rights Law
(N.Y. Exec. Law § 296 et seq.)

80. Plaintiff and the class repeat and reallege all above paragraphs as if fully set forth herein.

81. By the acts and practices described above, defendant has discriminated against plaintiff and Class Members by refusing to provide reasonable accommodation to disabled employees.

82. Defendant is liable under the NYSHRL as plaintiff's and Class Members' employer.

83. Defendant has acted intentionally and with malice or reckless indifference to plaintiff's and class members' statutorily protected rights under the NYSHRL.

84. As a result of defendant's discriminatory treatment, plaintiff and the class have suffered and will continue to suffer irreparable injury unless and until this Court grants relief.

85. As a result of defendant's discriminatory treatment, plaintiff Torres has suffered and will continue to suffer monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

THIRD CAUSE OF ACTION
Violation of the New York City Human Rights Law
(N.Y.C. Admin. Code § 8-101 et seq.)

86. Plaintiff and the class repeat and reallege all above paragraphs as if fully set forth herein.

87. By the acts and practices described above, defendant has discriminated against plaintiff and Class Members by refusing to provide reasonable accommodation to disabled employees.

88. Defendant's refusal to consider reasonable accommodation also constitutes a violation of the independent NYCHRL requirement to engage in cooperative dialogue, N.Y.C. Admin. Code § 8-107(28).

89. Defendant is liable under the NYCHRL as plaintiff's and Class Members' employer because they have four or more employees.

90. Defendant engaged in discriminatory conduct with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

91. As a result of defendant's discriminatory treatment, plaintiff and the class have suffered and will continue to suffer irreparable injury unless and until this Court grants relief.

92. As a result of defendant's discriminatory treatment, plaintiff has suffered and will continue to suffer monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) That this matter be certified as a class action as set forth above, that plaintiff be appointed class representative, and his attorneys be appointed class counsel;

(b) enjoining and permanently restraining these violations;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff or the class, including, but not limited to, revising the subject policy and re-processing Class Members' accommodation requests lawfully;

(d) directing defendant to place plaintiff Torres in the position that he would have occupied but for defendant's discriminatory conduct, including, but not limited to, reinstatement to his position as an Operations Crewmember, and making him whole for all earnings and other benefits he would have received but for Defendant's discrimination, including, but not limited to wages, bonuses, pensions, and other lost benefits;

(e) directing defendant to pay plaintiff Torres compensatory damages, including damages for emotional distress, humiliation, reputational harm, lost career opportunity, and pain and suffering;

(f) directing defendant to pay plaintiff Torres punitive damages;

(g) awarding reasonable attorneys' fees and costs;

(h) awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award; and

(i) granting such other and further relief as the Court deems necessary and proper.

DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on his damages claims.

Dated: New York, New York  
       February 5, 2025

VLADECK, RASKIN & CLARK, P.C.

By:     s/Maia Goodell  
Maia Goodell  
111 Broadway, Suite 1505  
New York, New York 10006  
(212) 403-7300  
*Attorneys for Plaintiff*